IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JUANITA NELSON

    Plaintiff

  v                                    Civil Case No. L-10-1816

CITY OF CRISFIELD, et al.

    Defendants

o0o
## MEMORANDUM

This case arises out of the refusal of the Volunteer Fire Department of Crisfield, Maryland to hire Plaintiff Juanita Nelson, allegedly because of her gender. Nelson sues the City of Crisfield ("City"); the Crisfield Volunteer Fire Department ("Fire Department"); and three individual members of the Fire Department: Ronnie Hinman, Larry Tyler, and Charles Cavanaugh ("Individual Defendants"). Now pending is Defendants' Motion to Dismiss. Docket No. 12. The Court has carefully reviewed the papers and no hearing is deemed necessary. See Local Rule 105.6 (D. Md. 2010). For the reasons stated herein, the Court will, by separate order, GRANT IN PART and DENY IN PART Defendants' Motion.

All claims against the City of Crisfield will be dismissed, and it will be terminated as a party to the litigation. Counts II and III, alleging civil conspiracy, will be dismissed in full. Count I, alleging violations of § 1983, and count IV, alleging intentional infliction of emotional distress, will proceed against the Individual Defendants and the Fire Department. The Court will enter a scheduling order, and the case will proceed to discovery.

## I. BACKGROUND

The facts are fully set forth in the parties' briefs. The essential facts as alleged by Nelson are as follows. In January 2008, Nelson completed an application for the Crisfield Volunteer Fire Department, and soon thereafter was advised that it had been rejected because she did not receive the required number of votes from Fire Department members.[1] When Nelson subsequently spoke with Chief William Reynolds, he indicated that there were members "who did not want her in because they did not want women in the Department." Docket No. 15, ¶ 9. Once the requisite waiting period had passed, Nelson reapplied, and was again rejected. She alleges that before the second vote, Defendant Ronnie Hinman began soliciting older members, who do not normally attend meetings, to show up and vote against her, and that one of those so solicited opined that "if we let a female in here, it will never be the same again."

In early 2009, Nelson applied and was rejected a third time. When she requested another application, she was informed that no new applications were being accepted owing to the unavailability of "turn-out gear" for new members. Nelson wrote the Department indicating that she would provide her own gear, but never received a reply or an application. In December 2009, Nelson was informed by Chief Reynolds that applications were still closed and would remain closed. In November 2009, however, the Department had admitted two male applicants. Nelson alleges that the Department has admitted a total of nine male applicants since she first applied and, since its incorporation in 1921, has never admitted a woman.

---

[1] Candidates must get at least two thirds of the vote of eligible members in attendance at the meeting where the vote takes place. Voting is conducted by secret ballot.

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead plausible, not merely conceivable, facts in support of her claim. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). The complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965. The court must, however, "assume the veracity [of well-pleaded factual allegations] and then determine whether they plausibly give rise to an entitlement of relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

## III. DISCUSSION

### a. Local Government Tort Claims Act

This is a threshold issue for all claims against the City. The Maryland Local Government Tort Claims Act ("LGTCA") provides that no action for unliquidated damages may be brought against a local government or its employees unless written notice is provided by the claimant or her representative to the corporate authorities of the defendant local government within 180 days of the injury. See Md. Code Ann. Cts. & Jud. Proc. § 5-304. Nelson never provided direct notice, but contends that conversations between her attorney and the City Attorney, and/or notice of her claim provided to the City Manager by the EEOC, constitute either full or substantial compliance. Defendants argue that the first is invalid because not in writing, and the second is invalid because the EEOC was not acting as Nelson's "representative," because the notice was a notice of an occurrence and not a tort claim, and because as a factual matter the City Manager is not a "corporate authority" of the local government.

It is well established that notice under the LGTCA is a condition precedent to the right to maintain a suit against a local government entity. Wilbon v. Hunsicker, 172 Md. App. 181, 190–91 (2006). The purpose of the statute, however, is to apprise the governmental entity of its potential liability at a time when it could conduct its own investigation, while the evidence is still fresh and it can ascertain the extent of the injury and its own responsibility. Williams v. Maynard, 359 Md. 379, 389–90 (2000). The Maryland Court of Appeals has held that "[w]here the purpose of the notice requirements is fulfilled, but not necessarily in a manner technically compliant with all of the terms of the statute, this Court has found such substantial compliance to satisfy the statute." Faulk v. Ewing, 371 Md. 284, 299 (2002) (citations omitted). In this case the EEOC notice was within the 180-day timeframe (with regard to at least one rejection),[2] provided the identity of the claimant, the time and place of the event, the nature of the claim, and the Plaintiff's intent to pursue litigation. See Plaintiff's Opposition, Docket No. 14 at 5. While Nelson did not technically comply, it seems clear that the purposes of the statute were satisfied in this instance.[3] The City had notice of the exact nature of Nelson's claim at a time when it could conduct its own investigation. In fact, the EEOC notice specifically advised the City to preserve its personnel and other records. The Court therefore deems Nelson in substantial compliance with the LGTCA, and finds that her claims are not barred on this basis.

### b. Count I – 42 U.S.C. § 1983 (Due Process, Equal Protection)

The City moves for dismissal of Nelson's § 1983 claims on the grounds that the Fire Department is not a city agency, nor its members city employees, and that in any event Monell

---

[2] There is some confusion regarding the exact dates of applications and rejections. The Amended Complaint states that Nelson applied in January 2008 and then again in August 2008. The motion papers and (presumably) the EEOC complaint make reference to a May 2008 application as well as an August 2008 application.

[3] There are questions as to whether the EEOC can properly be considered a claimant's representative and whether the City Manager was a proper recipient of the notice given. Since the Court finds substantial compliance in any event, these issues need not be decided.

liability is improper because the complaint fails to allege that the injury was the result of a custom, policy, or practice of the City. Under the Supreme Court's decision in <u>Monell v. New York City Dep't of Soc. Servs.</u>, municipalities and other local government units are "persons" that can be sued under 42 U.S.C. § 1983 if the action that is alleged to be unconstitutional implements or executes a policy or custom adopted by the body's officers, whether or not the policy or custom has received formal approval. 436 U.S. 658, 690 (1978). If a constitutional deprivation is to spring from a municipal policy, however, not only must there be an underlying constitutional violation stemming from action taken under color of law, but the municipality must necessarily have policymaking authority over the actors alleged to have violated a plaintiff's rights. That is, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory. <u>Id.</u> at 691.

It is clear that the Fire Department and its employees, at least, are properly government actors and thus subject to § 1983 liability. Where a state delegates to an otherwise private actor those "public" functions traditionally the exclusive province of the state, that actor may be held liable under § 1983, even without demonstration of nexus between any indicia of state action and specific acts comprising alleged constitutional violations. <u>See</u> <u>Goldstein v. Chestnut Ridge Volunteer Fire Co.</u>, 218 F.3d 337, 348 (4th Cir. 2000) (finding that a volunteer fire department's personnel decisions were made under "color of law," for purposes of § 1983, although company was a non-profit Maryland corporation operating under its own constitution and bylaws, owned land and building from which it operated, held title to engines, hoses, and related equipment, and elected its own officers and directors).

While the City of Crisfield funds the Department and grants it and its members several benefits, however, there is little if any indication that it possesses the requisite policymaking

authority to give rise to a Monell claim.  First, Section 47 of the Crisfield City Code provides that the Crisfield Volunteer Fire Department and its members "shall not be deemed employees of the City of Crisfield."  The Crisfield City charter gives the City Council the power to pass ordinances to "suppress fires and prevent the dangers thereof and to establish and maintain a Fire Department; to contribute funds to volunteer fire companies serving the city; . . . [and] to issue regulations concerning fire hazards . . . ."  Crisfield City Charter, Art. IV § 23.  The City also provides both the Fire Department and its employees with certain miscellaneous economic benefits.  Nelson's contention to the contrary notwithstanding, however, there is no evidence that the Counsel has authority to establish Fire Department policies and procedures.  Policy in the Monell context is used in its ordinary sense to signify "a specific decision or set of decisions designed to carry out such a chosen course of action."  Pembaur v. City of Cincinnati, 475 U.S. 469, 481 n. 9 (1986).  The most that the City could do to affect Fire Department policy would be to threaten to defund the department.  Even if, as Nelson contends, the City was aware of a policy or custom of the Fire Department to exclude women and nonetheless continued to provide funding, passive acceptance is insufficient for liability to attach.  "Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights."  Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 415 (1997).  The § 1983 claim against the City of Crisfield must, therefore, be dismissed.

The complaint alleges, however, that the Individual Defendants, acting pursuant to Fire Department policy, voted against Nelson's candidacy simply because of her gender, and solicited others to do the same.  These allegations are fully sufficient to state a cause of action, and the

§ 1983 claims against the Fire Department and the Individual Defendants will be allowed to proceed.

### c. Counts II, III – § 1985(3) Federal Civil Conspiracy and MD Common Law Conspiracy

Nelson next advances claims of civil conspiracy against all Defendants under both federal and state law. To state a claim for federal conspiracy to deny equal protection of the laws under 42 U.S.C. § 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy. Buschi v. Kirven, 775 F.2d 1240, 1257 (4th Cir. 1985). The elements of Maryland common law conspiracy are much the same. See Hoffman v. Stamper, 385 Md. 1, 24–25 (2005).

#### 1. City of Crisfield

As to the City, the Complaint alleges only that it "continued to fund and support the Fire Company with knowledge of its policy of discrimination and with specific knowledge of its discrimination against the Plaintiff." Docket No. 15, ¶ 27. This clearly fails to satisfy the elements of civil conspiracy claim. A plaintiff must advance more than "conclusory allegations of conspiracy, unsupported by a factual showing of participation in a joint plan of action." Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995). Passive acceptance of a discriminatory policy and continuation of funding do not constitute invidious discriminatory animus, and nothing in the Complaint suggests an actual meeting of the minds. Counts II and III will therefore be dismissed as against the City of Crisfield.

#### 2. Intracorporate Immunity

The Individual Defendants and the Fire Department claim that they are immune from suit under the intracorporate conspiracy doctrine, which states that a corporation cannot conspire with itself and that acts of the corporate agents are acts of the corporation. See <u>Buschi</u>, 775 F.2d at 1257. Nelson relies on an exception to this general rule first recognized in <u>Hodgin v. Jefferson</u>, 447 F. Supp. 804 (D. Md. 1978), which held that individual defendants could be sued for civil conspiracy where their acts were unauthorized by their employer. While her primary theory of recovery alleges a discriminatory policy by the Fire Department itself, she argues that, "[a]s was the case in <u>Hodgin</u>, the individual defendants' alleged actions were potentially committed on 'their own time' and unauthorized by the Fire Department." Plaintiff's Opposition, Doc. No. 14 at 23. In that case, however, the Court found that the plaintiff had charged the individual defendant with ignoring the stated policies of his employer. Here, Nelson never alleges a Fire Department policy of nondiscrimination from which the Individual Defendants departed or suggests that their acts were unauthorized; indeed, she consistently claims the opposite. Courts have declined to apply the <u>Hodgin</u> exception where the plaintiff "fail[s] to allege facts in her complaint that would make this exception applicable to her case . . . ." <u>Locus v. Fayetteville State Univ.</u>, 870 F.2d 655 (4th Cir. 1989). See also <u>Bank Realty, Inc. v. Practical Management Technology, Inc.</u>, 1991 WL 97490 at *4 (4th Cir. 1992) ("Nothing in the language of the complaint . . . alleges facts sufficient to invoke either of the exceptions to the intracorporate conspiracy doctrine recognized under the law of the Fourth Circuit."). To permit plaintiffs to charge civil conspiracy as an alternate theory of recovery in every case where defendants' acts were "potentially" unauthorized would expand the exception far beyond its intended scope and sap the intracorporate immunity doctrine of all force and effect at the motion-to-dismiss stage. Counts II and III must therefore be dismissed as to the Fire

Department and Individual Defendants as well.  If, however, discovery unearths reason to believe that the Individual Defendants were acting contrary to an established policy of non-discrimination, Nelson may move for leave to amend her Complaint to change her theory of recovery.

### d. Count IV – Intentional Infliction of Emotional Distress

Defendants assert that the City is immune from suit in Counts III and IV based upon governmental immunity, because even if the firefighters were employees of the City, Maryland counties and municipalities generally possess immunity from tort liability for actions that are governmental in nature, such as firefighting.  This assertion is not challenged in Nelson's reply, and the Court therefore assumes that this portion of Defendants' Motion to Dismiss is uncontested.  Similarly, the Defendants have chosen not to address Nelson's IIED claims as they relate to the Individual Defendants and the Fire Department, and so those claims will proceed.  Count IV will therefore be dismissed as against the City only.

## IV. CONCLUSION

For the foregoing reasons the Court will, by separate Order of even date, GRANT IN PART and DENY IN PART Defendants' Motion to Dismiss.

Dated this 5th day of October, 2010.

/s/
_____
Benson Everett Legg
United States District Judge